**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,<br><br>　　　　Defendants. | 20 Civ. 5615 (KPF) |
| RETIREMENT PROGRAM FOR EMPLOYEES OF THE TOWN OF FAIRFIELD, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,<br><br>　　　　Defendants. | 20 Civ. 5817 (KPF) |
| LEHIGH UNIVERSITY,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,<br><br>　　　　Defendants. | 20 Civ. 7061 (KPF) |
| TEAMSTER MEMBERS RETIREMENT PLAN, *et al.*,<br><br>　　　　Plaintiffs, | 20 Civ. 7154 (KPF) |

v.

ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,

      Defendants.

---

BLUE CROSS AND BLUE SHIELD
ASSOCIATION NATIONAL EMPLOYEE
BENEFITS COMMITTEE,

      Plaintiff,

          v.

ALLIANZ GLOBAL INVESTORS U.S. LLC,
*et al.*,

      Defendants.

20 Civ. 7606 (KPF)

---

METROPOLITAN TRANSPORTATION
AUTHORITY DEFINED BENEFIT PENSION
PLAN MASTER TRUST, *et al.*,

      Plaintiffs,

          v.

ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,

      Defendants.

20 Civ. 7842 (KPF)

---

CHICAGO AREA I.B. OF T. PENSION PLAN &
TRUST, *et al.*,

      Plaintiffs,

          v.

ALLIANZ GLOBAL INVESTORS U.S. LLC,
*et al.*,

      Defendants.

20 Civ. 7952 (KPF)

THE EMPLOYES' RETIREMENT SYSTEM OF
THE CITY OF MILWAUKEE,

       Plaintiff,

          v.

ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,

       Defendants.

20 Civ. 8642 (KPF)

---

CHICAGO & VICINITY LABORERS DISTRICT
COUNCIL PENSION FUND AND CHICAGO &
VICINITY LABORERS DISTRICT COUNCIL
HEALTH & WELFARE FUND, *et al.*,

       Plaintiffs,

          v.

ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,

       Defendants.

20 Civ. 9478 (KPF)

---

THE BOARDS OF TRUSTEES FOR THE
CARPENTERS HEALTH AND SECURITY
TRUST OF WESTERN WASHINGTON AND
FOR THE GROUP INVESTMENT TRUST OF
THE CARPENTERS INDIVIDUAL ACCOUNT
PENSION TRUST OF WESTERN
WASHINGTON, *et al.*,

       Plaintiffs,

          v.

ALLIANZ GLOBAL INVESTORS U.S. LLC, *et al.*,

       Defendants.

20 Civ. 9479 (KPF)

|  |  |
|---|---|
| UNITED FOOD & COMMERCIAL WORKERS UNIONS & EMPLOYERS MIDWEST PENSION FUND, AND ITS TRUSTEES,<br><br>    Plaintiffs,<br><br>       v.<br><br>ALLIANZ GLOBAL INVESTORS U.S. LLC, et al.,<br><br>    Defendants. | 20 Civ. 9587 (KPF) |
| BOARD OF TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 38 PENSION FUND PENSION PLAN,<br><br>    Plaintiff,<br><br>       v.<br><br>ALLIANZ GLOBAL INVESTORS U.S., LLC, et al.,<br><br>    Defendants. | 20 Civ. 10028 (KPF) |

## JOINT REPORT ON PROPOSED FRAMEWORK FOR CASE MANAGEMENT

        In accordance with the Court's November 25, 2020 order (*see*, *e.g.*, 20-cv-5615, Nov. 25, 2020 Min. Order), the parties ("Parties") to the above-referenced actions (the "Related Actions") submit this Joint Report.[1]  The Parties have met and conferred numerous times in writing

---

[1]    Defendant Aon Investments USA, Inc. ("Aon") is a party in *Blue Cross Blue Shield Association National Employee Benefits Committee* v. *Allianz Global Investors U.S. LLC et al.,* No. 20-cv-07606 ("*BCBS*") and no other action.  Aon joins the below only insofar as it relates to Aon's obligations as a party to *BCBS*, and by so joining does not waive any rights and does not consent to participate in any other Related Action as a party.  Except as expressly noted, Aon takes

and telephonically since the conference, and Defendants and certain individual Plaintiffs have also conferred as to case-specific issues. The proposed Case Management Plan submitted with this Joint Report details the Parties' agreements and areas of disagreement. (*See* Exhibit A.) The Parties provide this Joint Report to provide the Court with further context.

**THE PARTIES' AGREEMENTS**

The following agreements were reached as a result of the conferrals:

***Voluntary Dismissal and Tolling Agreement for Allianz Affiliate Defendants***. Plaintiffs in the 11 Related Actions that named affiliated Allianz entities other than Allianz Global Investors U.S. LLC ("AllianzGI US") as defendants (the "Allianz Affiliate Defendants") have agreed, within three days of the Court's entry of a case management order reflecting such Parties' agreements, to voluntarily dismiss all claims against the Allianz Affiliate Defendants without prejudice in exchange for an agreement to toll applicable time-related defenses for a term of one year from such case management order. The parties will meet and confer prior to the expiry of the term to discuss any further extension on mutual consent. The parties to *Retirement Program for Employees of the Town of Fairfield et al.* v. *Allianz Global Investors U.S. LLC et al.*, No. 20-cv-05817 ("*Fairfield*") and *Teamster Members Retirement Plan* v. *Allianz Global Investors U.S. LLC et al*, No. 20-cv-07154 ("*Teamsters*") (together, the "Putative Class Actions") have further agreed that putative absent class members in those cases may benefit from the tolling agreement to the extent permitted by applicable law. As a result of this agreement, the Allianz Affiliate Defendants will be dismissed from the 11 Related Actions where they are named, which will eliminate the

---

no position on the issues below and is prepared to comply with those deadlines ordered by the Court in *BCBS*.

briefing of arguments on the Court's personal jurisdiction over the Allianz Affiliate Defendants and on Plaintiffs' claims of vicarious liability.

   ***Voluntary Dismissal of State Law Claim against Aon in* BCBS**.  Plaintiff BCBS and Defendant Aon have reached an agreement regarding the dismissal of certain of BCBS' claims against Aon in *BCBS* without prejudice, and anticipate submitting a joint stipulation memorializing that agreement with the Court within three business days.

   ***Commencement and Coordination of Fact and Expert Discovery***.  The Parties have agreed that fact discovery may commence on December 10, 2020.  Consistent with "the Court's intention to coordinate motion practice and discovery in as many of these cases as possible, to the greatest extent possible" (Sept. 11, 2020 Order (20-cv-5615, ECF No. 52) at 2), Plaintiffs have agreed to coordinate to the fullest extent possible to serve on December 10, 2020 a single set of initial requests for production of documents ("RFPs") on AllianzGI US applicable to all Related Actions.  AllianzGI US will serve its RFPs on Plaintiffs and Aon on the same date.  Aon will also exchange RFPs with the Parties to *BCBS* on the same date, and BCBS and AllianzGI US will serve RFPs on Aon on that date.  The Parties are currently negotiating a protective order and protocols for the production of electronically stored information ("ESI").  The Parties will file these documents with the Court within 14 days of the Court's order on the Parties' proposed case management framework.

   Plaintiffs and AllianzGI US have further agreed (i) that they will meet and confer regarding the form and substance of AllianzGI US's motions to dismiss, including appropriate page limits; (ii) that Plaintiffs may file amended complaints prior to the filing of AllianzGI US's motion to dismiss; (iii) on a briefing schedule for the motions to dismiss, subject to AllianzGI US's reservations of its rights herein; and (iv) on the timing of Rule 26(a) disclosures, Answers, Local

Rule 33 interrogatories, substantial completion of document production in response to the initial RFPs, and requests to admit. The Parties to the Putative Class Actions have further agreed to meet and confer regarding a schedule for briefing class certification within 14 days of this Court's ruling on motions to dismiss in those actions.

## THE PARTIES' DISAGREEMENTS

## I.    PLAINTIFFS' STATEMENT

Plaintiffs in the Related Actions—predominantly retirement and health plans whose beneficiaries include current and retired teachers, workers, and government employees— seek a schedule and case management plan that reflects the realities of AllianzGI US's misconduct and the discovery needed to prepare the case for trial. Plaintiffs' proposed framework reflects substantial compromises by Plaintiffs that were undertaken at the Court's direction and with the specific aim of streamlining discovery and motion practice to advance the prompt resolution of these important claims.

Plaintiffs do not wish to burden the Court with a lengthy submission filled with unnecessary argument. Plaintiffs therefore limit their statement to explaining their position on the most significant of the proposed terms in the Case Management Plan on which the Parties disagree.

### A.    Completion of Fact Discovery

Plaintiffs propose a fact discovery deadline of October 29, 2021, a fact discovery period that is twice the length provided by default in the Court's standard case management order and far longer than many billion-dollar damage cases involving far greater complexity and scope. (CMP ¶ 12(f).) (Some examples provided in a footnote below.[2]) AllianzGI US's counterproposal

---

[2]    *Cf. In re Petrobras Sec. Litig.*, No. 14-cv-9662(JSR) (ECF No. 192) (S.D.N.Y.) (ordering nine-month discovery period and requiring case to be ready for trial in ten months in large securities class action with over 30 opt-outs, 34 defendants, five-year class period, and numerous

of a June 2022 fact discovery cutoff only invites unnecessary delay. To allay AllianzGI US's

concern that fact discovery could not be completed by October 2021, Plaintiffs have proposed a

requirement that the parties meet and confer in June 2021 to determine if an extension to the fact

discovery deadline is needed.  Plaintiffs' proposal thus strikes the balance between setting a

schedule that encourages the parties to move forward expeditiously with discovery while

maintaining flexibility to accommodate any legitimate need for additional time.

AllianzGI US's insistence on a prolonged fact discovery schedule is based

primarily on the false notion that these cases are somehow vastly more complex and expansive

than cases routinely litigated in this District, and a purported concern that similar cases may be

filed in the future.  In fact, the opposite is true—the core of AllianzGI US's misconduct occurred

over a relatively short time period and involved a handful of individuals responsible for the same

---

foreign parties); *Martinek v. Amtrust Fin. Servs.*, No. 19 Civ. 8030(KPF) (ECF No. 37) (ordering nine-month fact discovery period in securities class action alleging years-long misconduct preceding one-year class period involving going-private transaction and delisting of six preferred securities); *Pacific Life Ins. Co. v. The Bank of New York Mellon*, No. 17 Civ. 1388(KPF) (ECF No. 66) at 2 (ordering one-year fact discovery period in case alleging five-year period of trustee breaches); *In re GSE Bonds Antitrust Litigation*, No. 19 Civ. 1704(JSR) (ECF No. 169) at 2 (ordering seven-month and one-week period for fact depositions in case alleging conspiracy among 16 defendants over seven-year period); *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-md-01695(CM) (Dkt. No. 139) (S.D.N.Y.) (extending fact discovery to ten months from prior period of six months in multidistrict securities class action against five defendants involving numerous accounting violations and alleged misstatements); *In re Petrobras Sec. Litig.*, No. 14-cv-9662(JSR) (ECF No. 789-5) (S.D.N.Y.) (81 depositions taken or defended over ten-month fact and expert discovery period).  AllianzGI US's own schedule proposal in a far more expansive action pending before Judge Schofield confirms the reasonableness of Plaintiffs' proposal here.  *See Allianz Global Investors GmbH v. Bank of Am. Corp.*, No. 18 Civ. 10346(LGS) (ECF No. 435-1) (AllianzGI US proposed a 13-month fact discovery period in coordinated opt-out action involving twelve investment manager groups representing well over 1,000 named plaintiffs and a ten-year alleged conspiracy among over ten U.S. and foreign defendant banks).  And if anything, AllianzGI US's examples support a shorter schedule, not a longer one.  *E.g.*, *LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, 2017 WL 4862792, at *3-4 (S.D.N.Y. Oct. 17, 2017) ("unnecessarily lengthy" pretrial period resulted from defendant's "foot-dragging" and improper conduct, noting the "public interest favors a speedy resolution").

trading strategy—and the possibility that future individual or opt-out actions may be filed is no reason to delay discovery.

### B.     Completion of Expert Discovery

Plaintiffs propose a four-month expert discovery period, with a deadline of February 28, 2022, as compared to AllianzGI US's proposal of nine months for expert discovery. (CMP ¶ 12(f).) AllianzGI US suggests that uncertainty about the nature and scope of expert discovery requires a prolonged expert discovery period. To the extent the uncertainty AllianzGI US postulates is real, however, Plaintiffs have proposed a measure to address that uncertainty— namely, that the Parties must confer about any need for an extension to the expert discovery deadline well before even the fact discovery deadline has lapsed.  (CMP ¶ 13.)  Rather than adopt a prolonged expert discovery period now because of some complication that AllianzGI US speculates may occur in the future, Plaintiffs submit that the better course is to adopt a more reasonable timeline for expert disclosures but require the parties to revisit whether there is a legitimate need for more time when the Parties (and the Court) have more information to inform that judgment.

### C.     Document Discovery

To promote efficient discovery, Plaintiffs have agreed to coordinate fact discovery across the Related Actions to the extent possible, including for instance, through initial joint document requests served on AllianzGI US across the Related Actions. In exchange for this coordination (and other concessions Plaintiffs made in the negotiation of the proposed Case Management Plan), Plaintiffs have proposed the Parties promptly commence discovery by exchanging core documents related to the Structured Alpha Funds that AllianzGI US, Aon, and Plaintiffs have already produced to the Securities Exchange Commission ("SEC") or other regulators on a date certain (namely, 45 days after service of initial document requests). Although

it has agreed to produce a limited subset of these documents, AllianzGI US has refused to agree to this reciprocal exchange of documents, apparently hoping to delay or avoid production of plainly relevant documents.

Requiring production of documents previously produced to regulators is routinely ordered by courts (including this one) in light of the obvious efficiencies and lack of burden. *See, e.g., Gordon v. Amadeus IT Group USA*, No. 15 Civ. 5457(KPF) (ECF No. 174) at 2 (rejecting plaintiffs' request for fact discovery period lasting over a year in antitrust class action involving over 50 named plaintiffs, eight defendants, and 14-year class period and ordering in case management plan defendants produce documents previously produced in prior litigation); *In re GSE Bonds Antitrust Litig*., No. 19 Civ. 1704(JSR) (ECF No. 169) at 2 (ordering in case management plan that documents previously produced by government regulators be produced within three weeks). In fact, in pending litigation before Judge Schofield, AllianzGI US has taken the opposite position it advances here in demanding that prior government productions be re-produced wholesale. *See, e.g., Allianz Global Investors GmbH v. Bank of Am. Corp*., No. 18 Civ. 10346(LGS) (ECF No. 463-2) at 2 (AllianzGI US is "asking the [defendant] to produce all materials previously produced to any European regulators in connection with their FX investigations").

And while AllianzGI US attempts to identify some burden that could justify its refusal to reproduce already-produced documents, its claimed need to segregate documents case-by-case is a self-imposed burden that is contrary to its position that discovery should proceed in coordinated fashion across the Related Cases. Nor is that contention supported by any facts showing that the internal portfolio management work, conducted by the same small number of AllianzGI US employees for all of the Structured Alpha Funds involved here, actually differs

across any of these cases.  Indeed, AllianzGI US has not provided any facts to suggest that the documents it produced to the SEC—including the internal communications among those same employees—could somehow be irrelevant here.

**D.     MTA's ERISA Claim**

Consistent with the Court's direction at the November 17 Conference, the *MTA* Plaintiffs have offered to hold their ERISA fiduciary duty claim in abeyance pending resolution of AllianzGI US's motion to dismiss the *MTA* Plaintiffs' common law fiduciary duty claim.  As explained to AllianzGI US, the *MTA* Plaintiffs' compromise contemplates that either their ERISA claim be voluntarily dismissed should the Court uphold their fiduciary duty claim (thus avoiding any motion practice on this idiosyncratic issue), or any arguments AllianzGI US intends to raise concerning the ERISA claim be resolved in a supplemental round of minimal and expedited briefing.  AllianzGI US has rejected this offer, and instead takes the all-or-nothing position that either the *MTA* Plaintiffs do as it says and dismiss the ERISA claim now or the Parties brief the issue on the motion to dismiss based on AllianzGI US's argument that the ERISA claim is untenable.

AllianzGI US is wrong.  To start, AllianzGI US's argument is contradicted by the unambiguous contractual provisions here providing that "the provisions of Title I of ERISA shall be deemed to govern the conduct, responsibilities and liabilities of the [AllianzGI US] with respect to the [*MTA* Plaintiffs]" and that "[AllianzGI US] will be a fiduciary as if the [*MTA* Plaintiffs were] subject to Title I of ERISA." (Compl. ¶¶ 47, 150.)  Neither of the cases cited by AllianzGI US involve similar contractual language.  But more importantly, AllianzGI US's view on the relative strength of Plaintiffs' claim has nothing to do with how best to streamline the issues before the Court.  This is a matter of judicial efficiency, and AllianzGI US's unreasonable refusal to set this claim aside now only complicates the motion to dismiss briefing and belies their repeated

complaints concerning the purported burden they face.

## II.   ALLIANZGI US'S  STATEMENT

### A.   Completion of Fact Discovery

There is substantial disagreement between Plaintiffs and AllianzGI US as to the amount of time realistically needed to conduct fact and expert discovery in these complex Related Actions involving 27 Plaintiff entities (so far) and their party and third-party investment consultants, with at least the outset of the case occurring during the COVID-19 pandemic. AllianzGI US respectfully submits that fact discovery in the Related Actions—ten individual actions and two class actions (and counting)—could not possibly be done in the ten months that Plaintiffs propose.  The only reason for Plaintiffs' unreasonable and unworkable proposed schedule is the hope that this Court will order, at this early stage, unrealistic and highly prejudicial deadlines that in no way account for the procedural complexity, the volume of document discovery, the number of depositions, class certification, or the stakes in these Related Actions. Plaintiffs collectively seek to recover billions of dollars in alleged losses, have submitted several hundreds of pages of allegations, and assert a multitude of different legal theories and extensive *Plaintiff-specific* communications with AllianzGI US.  There is no basis to impose an accelerated and truncated discovery schedule on a set of cases that are complex, varied and still very much in flux.

A single class action involving far less complexity typically takes at least *two years for fact discovery alone*, as Plaintiffs' counsel are well aware from their other cases (where even a lengthy initial fact discovery period proved inadequate).  *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-2542 (S.D.N.Y.) (Broderick, J.) (ECF Nos. 354-1, 379, 668) (in multidistrict antitrust litigation where Kaplan Fox acted as interim class counsel, setting initial fact discovery deadline of 16 months, later extended to 27 months); *Shirk* v. *Fifth Third*

*Bancorp*, No. 05-cv-049 (S.D. Ohio.) (ECF Nos. 70, 244, 363) (in putative ERISA class action where Scott + Scott acted as lead counsel, setting initial 17-month deadline for fact discovery; extended to 32 months, and extended again to 46 months);[3] *see also Iowa Pub. Emps.' Ret. Sys.* v. *Bank of America Corporation*, 17-cv-6221 (S.D.N.Y.) (Failla, J.) (ECF Nos. 137, 298) (in single class action, setting initial fact discovery period of 17 months, later extending deadline for completion of fact depositions to 23 months).[4]  The schedules that Plaintiffs cite in cases before Judge Rakoff (*In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y.) (ECF No. 192), and *In re GSE Bonds Antitrust Litig.*, No. 19–cv-1704 (S.D.N.Y.) (ECF No. 169)) are outliers to the normal

---

[3]     *See also In re 21st Century Oncology Customer Data Sec. Breach Litig.*, No. 16-md-2737 (M.D. Fla.) (ECF No. 97) (in consolidated multidistrict litigation alleging statutory claims, negligence, and unjust enrichment stemming from a data breach where Kaplan Fox was member of plaintiffs' Steering Committee, setting 19-month fact discovery period); *Manson* v. *Schering-Plough Corp.*, No. 08-cv-397 (D.N.J.) (ECF Nos. 146, 225) (in consolidated Securities Act and ERISA class action where Bernstein Litowitz acted as co-lead plaintiffs' counsel, ordering initial 16-month fact discovery period, later extended to 21 months); *Bayer Healthcare Pharm. Inc.* v. *Watson Pharm., Inc.,* No. 07-cv-1472 (D. Nev.) (ECF Nos. 33, 193) (in consolidated actions alleging patent infringement, setting initial fact discovery deadline of 11 months, extended to 30 months); *In re Evoqua Water Techs. Corp. Sec. Lit.*, No. 18-cv-10320 (S.D.N.Y.) (Nathan, J.) (ECF No. 93) (in securities class action where Bernstein Litowitz and Scott + Scott acted as lead plaintiffs' counsel, setting 12-month fact discovery period).

[4]     Plaintiffs' citation to this Court's order setting a nine-month discovery period in *Martinek* v. *Amtrust Fin. Servs.*, No. 19–cv-8030 (S.D.N.Y.) (Failla, J.) (ECF No. 37), entered just two months ago, is inapposite, as discovery in securities class actions, unlike here, is predominantly of defendants.  As explained below, AllianzGI US will likely be taking substantial document discovery and more deposition discovery than any individual Plaintiff here.  Plaintiffs' citation to *Pacific Life Ins. Co.* v. *The Bank of New York Mellon*, No. 17–cv-1388 (S.D.N.Y.) (Failla, J.) (ECF No. 66) (ordering 13-month fact discovery period in case alleging trustee breaches), *supports* the minimum 18-month to 24-month period proposed here for a dozen (and counting) Related Actions. Plaintiffs also incorrectly state that "AllianzGI US" proposed a 13-month fact discovery period in *Allianz Global Investors GmbH* v. *Bank of Am. Corp.*, No. 18–cv-10364 (S.D.N.Y.) (Schofield, J.) (ECF Nos. 393, 435-1).  AllianzGI US was a member of one of 12 plaintiff investment manager groups, and the bulk of discovery in that case alleging an antitrust conspiracy will come from the defendant banks, not from the "over 1,000 named plaintiffs" that Plaintiffs reference, which are simply individual investment funds.

course for fact discovery in this District, and numerous decisions show that discovery in individual cases that are far less complex than the twelve Related Actions often lasts "several years." *VR Optics, LLC* v. *Peloton Interactive, Inc.*, 2020 WL 1644204, at *6 (S.D.N.Y. Apr. 2, 2020) (Oetken, J.) (individual patent infringement action); *see LifeTree Trading Pte., Ltd.* v. *Washakie Renewable Energy, LLC*, 2017 WL 4862792, at *1 (S.D.N.Y. Oct. 27, 2017) (Oetken, J.) ("[t]wo years of discovery" for an individual action "alleging breach of a $90 million contract").[5]

In asserting that each of these Related Actions involves "a relatively short time period" and "a handful of individuals" (*see supra* at 8), Plaintiffs gloss over the realities of these matters, AllianzGI US's right to develop its defenses, and the prejudice that would result from an accelerated schedule in these cases.

- *First*, AllianzGI US is entitled to document discovery not only of *all* Parties, including the 27 separate Plaintiffs entities, but of third-party investment consultants who advised Plaintiffs in connection with their investments in the Structured Alpha Funds and who were obligated to understand and monitor all the risks of the Structured Alpha Funds and to explain those risks to their clients. Document and deposition discovery from the consultants is essential, as made clear in the *BCBS* complaint, which seeks to recover jointly and severally from AllianzGI US and Aon, BCBS's consultant, for Aon's alleged breach of these duties. (*See*, *e.g.*, *BCBS* Compl. ¶¶ 153-165.) Moreover, Plaintiffs' contention that the Related Actions concern only "a short time period" (*see*

---

[5]     *See Bristol-Meyers Squibb Co.* v. *Rhone-Poulenc Rorer, Inc.*, 2000 WL 356412, at *1 (S.D.N.Y. Apr. 5, 2000) (Patterson, J.) ("almost four years of discovery" for individual patent infringement action brought by single plaintiff against three defendant entities); *Goldberg* v. *Kidder Peabody & Co*., 991 F. Supp. 215, 218 (S.D.N.Y. 1997) (Jones, J.) ("nearly six years of discovery" for an individual action against a securities broker asserting claims for common law fraud, negligence, breach of contract, conversion, and violations of RICO and the federal securities laws).

*supra* at 8) is contradicted by their complaints, several of which plead allegations covering different but overlapping time periods stretching back years.  *See Lehigh* Compl. ¶ 95 (20 Civ. 7061) (alleging "portfolio review meetings" in "September 2017, May 2018, August 2018, and December 2018); *BCBS* Compl. ¶¶ 58, 62 (20 Civ. 7606) (alleging representations made "in an April 2017 pamphlet" and a presentation made "[o]n June 18, 2018").

- *Second*, the schedule must further account for the number of anticipated party and third-party depositions, which will easily exceed 80 depositions in total (even by a *very* conservative estimate of:  (i) ten AllianzGI US witnesses; (ii) five Plaintiff witnesses in each of the 12 Related Actions, several of which have multiple named Plaintiffs (for a total of at least 60);[6] and (iii) three witnesses at each of the five investment consultants (for a total of 15)).

- *Third*, class certification briefing must also be scheduled during the fact discovery period.  Plaintiffs ignore the complexity of litigating two overlapping class actions with ten individual actions, including, for example, the need for the Court to hold a hearing and to rule on whether classes can be certified here before expert discovery can commence, and the likelihood of an appeal of any class certification order pursuant to Rule 23(f).

---

[6]     AllianzGI US is entitled to take up to ten party depositions in each action.  Fed. R. Civ. P. 30(a)(2)(A)(i).  AllianzGI US's preliminary review of publicly available information has in fact identified dozens of potential witnesses at the 27 Plaintiffs in these actions, including board members, Trustees, Chief Investment Officers and investment management personnel, Chief Financial Officers and finance personnel, and internal audit and risk personnel.

- *Fourth*, on top of all this, the Parties do not know today when or whether additional related actions will be filed and included in the case management plan. The likelihood of additional lawsuits over the next several years introduces the prospect that the Court will either have to extend the existing fact and expert discovery schedules or to order separate fact and expert discovery schedules in later-filed cases, even though there will be overlap in the scope of fact and expert discovery in those later-filed cases with the Related Actions. A longer fact and expert discovery period in the Related Actions increases the likelihood that later-filed cases can be incorporated into the fact and expert discovery schedule in the Related Actions.

Plaintiffs' suggestion that fact discovery should end on October 29, 2021 ignores all of these necessary steps, as Plaintiffs tacitly recognize by proposing that the Parties engage in a meet and confer process by June 3, 2021 to extend this unrealistic deadline. (*See* Exhibit A ¶ 12(f).)

AllianzGI US respectfully submits that 18 months is the absolute minimum fact discovery period that is feasible, and 24 months is likely more realistic. AllianzGI US proposes that the Parties meet and confer to discuss any needed extension of this deadline six months prior to the close of fact discovery, when the cases are more developed and after the Parties have had the opportunity to serve and respond to written discovery requests and notices of fact depositions.

### B. Completion of Expert Discovery

There is substantial uncertainty as to how expert discovery will unfold, including the number of potential experts in the Related Actions, which could easily exceed 30. AllianzGI US does not know, and Plaintiffs do not yet know either, the extent to which Plaintiffs may coordinate in connection with their use of experts, but AllianzGI US could not realistically produce its own expert reports and respond to potentially dozens of Plaintiffs' expert reports in just four months, much less take a corresponding number of expert depositions.

The nine-month expert discovery period AllianzGI US has proposed is far more reasonable, and contrary to Plaintiffs' characterization, AllianzGI US is not proposing a longer schedule based on "some complication that AllianzGI US speculates may occur in the future." (*See supra* at 9.)  AllianzGI US instead simply recognizes—as Plaintiffs refuse to do—that the extent to which Plaintiffs may coordinate on the use of experts is completely unknown, as are the number of experts, the topics they may address, and the time needed for their work, which will involve analysis of complex trading data.  For those reasons, AllianzGI US further proposes that the Parties meet and confer no later than six months prior to the close of fact discovery to set schedules for expert disclosures and to disclose well in advance of expert discovery the topics on which the Parties propose to have experts.  This will allow Plaintiffs to initiate any coordination in a timely manner and the Parties to assess whether an extension of the expert discovery period for the Related Actions is warranted.  Plaintiffs again recognize that the Parties should meet and confer to adjust the completion date for expert discovery, but their proposal of July 1, 2021 is too soon for any meet and confer to be productive.

### C.   Document Discovery

In an effort to accommodate Plaintiffs' request to jump-start discovery, AllianzGI US has offered to re-produce in 45 days the trading and holdings data for the Structured Alpha Funds from the SEC productions—the data Plaintiffs have long claimed to be of primary interest to them for initial discovery purposes.[7]  Such data can be re-produced with relatively less

---

[7]   By agreeing, by way of compromise, to produce such data, AllianzGI US is not conceding in any respect that all documents, data, or communications across the Structured Alpha Funds would be relevant to all Related Actions.  To the contrary, as noted herein, to respond to Plaintiffs' overbroad request, to which AllianzGI US objects, and to identify documents that "pertain to the Related Actions, or to the Plaintiff in a particular Related Action," will require a meet and confer process to identify relevant time periods, search terms, funds, investors, and custodians.

burden than the other categories of documents Plaintiffs seek and will allow Plaintiffs to analyze the trading conduct they allege in the complaints. AllianzGI US has further accommodated Plaintiffs' requests to get discovery underway quickly by agreeing that the Parties will serve RFPs on December 10, 2020—just days after the last-filed complaint and just four weeks after the November 17, 2020 conference (prior to which all deadlines were adjourned). (*See* 20-Civ-5615, ECF No. 52.) AllianzGI US has repeatedly expressed its willingness to confer with Plaintiffs in good faith, after receipt of their "coordinated" RFP, as to other categories of documents that could be produced reasonably quickly without undue burden. There is simply no basis for Plaintiffs to ask this Court to order expedited discovery and jettison the normal discovery process.

Rather than follow an orderly, coordinated discovery process, Plaintiffs' embed a discovery demand into the draft Case Management Plan that is untethered to (i) the Federal Rules; (ii) the RFPs the Parties will exchange on December 10, 2020; (iii) any custodians or search terms; or (iv) any date ranges (with limited exceptions). Indeed, Plaintiffs propose that this Court order AllianzGI US to immediately search an expansive regulatory production, which is ongoing, for documents from more than ten broad categories (such as "financial models or modeling reflecting analysis of the Structured Alpha Funds' portfolios and positions"; "any information or documents concerning scenario analyses, stress testing, risk analysis or risk management," and all "internal communications"), and to then produce responsive documents in 45 days "to the extent such documents pertain to the Related Actions, or to the Plaintiff in a particular Related Action" from among the far broader SEC production. (*See* Exhibit A at ¶ 14(a).)

But as AllianzGI US has explained, the SEC productions cover products, time periods, custodians and investors that are not relevant to all or any Related Action(s) and to which Plaintiffs are not entitled under Fed. R. Civ. P. 26(b). AllianzGI US's objection to Plaintiffs'

overbroad request thus is not, as Plaintiffs contend, simply that these twelve Related Actions are "more complex and expansive" than others in this District (*see supra* at 8)—which they certainly are—but that the scope of the Related Actions and the SEC productions do not align.  As a result, responding to Plaintiffs' overbroad request would require AllianzGI US to sift through the SEC productions in order to segregate irrelevant, non-responsive documents.  This substantial burden makes the SEC productions inappropriate for any kind of wholesale re-productions, as courts routinely recognize.  *See New Jersey Carpenters Health Fund* v. *DLJ Mortg. Capital, Inc*., No. 08-cv-05653, 2012 WL 13135408, at *1 (S.D.N.Y. Mar. 2, 2012) (Crotty, J.) (denying discovery request "that says 'you gave some documents to the government concerning another investigation, so give them to me'").[8]  Nevertheless, the fact that AllianzGI US has already collected and can search the SEC productions for potentially responsive, relevant documents in the Related Actions will help to accelerate discovery, and AllianzGI US has reasonably agreed to do that once it has reviewed the "coordinated" RFP to be served on December 10, 2020, served its objections, and met and conferred with Plaintiffs, which is the normal course in every litigation.

The cases Plaintiffs cite are inapposite, and Plaintiffs have distorted the position taken in *Allianz Global Investors GmbH v. Bank of Am. Corp*., No. 18-cv-10364 (Schofield, J.) (ECF No. 463-2 at 2), which is in fact consistent with AllianzGI US's position here.  In that case, defendants had voluntarily *agreed* to re-produce all materials produced to foreign competition

---

[8]     *See also Capital Ventures Int'l* v. *J.P. Morgan Mortg. Acquisition Corp.*, No. CIV.A. 12-10085-RWZ, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (denying motion to compel discovery of materials produced in other litigation or government investigations where "the issues in an RMBS litigation or investigation may vary widely" depending on, *inter alia*, the "claims and defenses," "time frame" or "representations" at issue); *Chen* v. *Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) (denying motion to compel "*carte blanche* production of all documents" from other litigation where cases involved "different (longer and earlier) time periods," involved "different and broader claims," and were in more advanced phases of discovery).

regulators, and in an email attached to plaintiffs' letter to the court raising a discovery dispute, plaintiffs simply reiterated their request to one defendant for materials produced to other regulators.  Such requests may be appropriate in circumstances not present here, where AllianzGI US's regulatory productions contain information having nothing to do with the Related Actions. But more significantly, the request for regulatory productions was irrelevant to the discovery dispute before the court, in which plaintiffs sought "basic custodial information" collected as part of one defendant's prior productions to regulators, and, for the other defendants, to run search terms "across all custodial documents previously collected in prior regulatory investigations and related actions, and to provide hit counts for each prior custodian." No. 18-cv-10364 (ECF No. 463 at 1, 4).  These requests were aimed at extracting pertinent information from the broad regulatory productions that had been produced, precisely the process that AllianzGI US proposes should be followed here.

Similarly, in *Gordon* v. *Amadeus IT Group USA*, No. 15-cv-5457 (Failla, J.) (ECF No. 173-1 at 2), *defendants* had proposed to re-produce their regulatory productions, which this Court so-ordered (ECF No. 174 at 2), and in *In re GSE Bonds Antitrust Litigation*, No. 19-cv-1704 (Rakoff, J.) (ECF No. 169 at 2), the parties had also agreed to the re-production of documents produced to regulators.  Judge Rakoff's order was limited to accelerating the timing of those re-productions.

In short, Plaintiffs' overbroad request, via a Case Management Plan, confirms that the Parties should adhere to the Federal and Local Rules governing discovery, which allow courts to resolve discovery disputes on a complete record, including the entire set of RFPs in question, any objections served, and any meet and confers or agreements as between the Parties to determine a reasonable approach to the scope of document production.  *See* Fed. R. Civ. P. 24(b)(1), (2).

AllianzGI US thus proposes that the Parties serve their respective RFPs on December 10, 2020, serve objections to the initial RFPs on January 11, 2021, and meet and confer no later than January 18, 2021 to discuss documents responsive to the RFPs that may be produced promptly, which will include the trading and holdings data that AllianzGI US has already offered to Plaintiffs.  Plaintiffs have indicated that they are also prepared to produce to AllianzGI US their respective document productions to the SEC.

### D.    MTA's ERISA Claim

MTA has insisted on previewing its position on a single motion to dismiss argument, which AllianzGI US will address in its forthcoming briefing.  The *MTA* Parties have engaged in extensive meet-and-confers, during which AllianzGI US explained repeatedly that the *MTA* Plaintiffs lack standing to bring ERISA claims because Section 1003 of ERISA excludes "governmental plans" from the Act's coverage.  *See* 29 U.S.C. § 1003(b)(1).[9]  In response, the *MTA* Plaintiffs suggested instead that AllianzGI US simply omit the standing argument from its briefs, and submit *another* round of motion to dismiss briefs on this single, indisputable issue in the event the Court were to agree with AllianzGI US and dismiss the *MTA* Plaintiffs' duplicative common-law breach of fiduciary claim.  Because the *MTA* Plaintiffs' wait-and-see proposal does not promote an efficient resolution of the motions to dismiss, and because the Parties have

---

[9]    A "governmental plan" is defined as "a plan established or maintained for its employees by," *inter alia*, "*the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing*."  29 U.S.C. § 1002(32) (emphasis added).  The Second Circuit has explicitly held that "the MTA is a political subdivision of the State of New York within the meaning of 29 U.S.C. § 1002(32)."  *Rose* v. *Long Island R.R. Pension Plan*, 828 F.2d 910, 917 (2d Cir. 1987); *see also Burke* v. *Solomon Acosta & Fascore/Great West & MTA/NYC Transit Authority*, No. 07-civ-9933, 2008 WL 11399425, at *3 (S.D.N.Y. Aug. 27, 2008) (Castel, J.) ("[T]he plans maintained by NYCTA and the MTA qualify as governmental plans and are exempt from ERISA.").

exhausted the meet-and-confer process on this issue, AllianzGI US will brief the standing issue in its forthcoming motion to dismiss.

### E.   Motion to Dismiss Cut-Off Date

AllianzGI US proposes that the Court order a cut-off date of December 3, 2020 (the "MTD Cut-Off Date"), such that motions to dismiss any new complaints filed after that date will be stayed pending the Court's rulings on motions to dismiss claims in the pending 12 Related Actions.  Since AllianzGI US first proposed coordinated briefing of motions to dismiss when eight complaints were designated as related, four new complaints (*Chicago Laborers*; *Washington Carpenters*; *UFCW;* and *IBEW*) and two amended putative class action complaints have been filed (*Teamster* and *Fairfield*), all in the last few weeks, including as recently as three days ago.  The complaints in the Related Actions comprise 650 pages, and there may be more to come:  Plaintiffs in *Fairfield* advised this Court on November 12, 2020 that they may file additional "separate actions" (Nov. 12, 2020 Pre-Conf. Letter (20 Civ. 5817, ECF No. 26 at 1 n. 1)), and AllianzGI US has reason to believe that additional related actions may also be filed.  Because AllianzGI US cannot prepare motions to dismiss against a moving target, and in order to limit the briefs submitted to the Court in what may end up being a first round of motions to dismiss, AllianzGI US respectfully requests that the Court order the MTD Cut-Off Date.  Plaintiffs do not object to this request.

In addition, AllianzGI US has agreed to confirm to Plaintiffs asserting claims under ERISA or Plaintiffs that are subject to ERISA which of the Structured Alpha Funds met the 25% ERISA threshold for the application of ERISA during the relevant time period.  *See* 29 C.F.R. § 2510.3–101(f)(1).  Plaintiffs proposed that AllianzGI US broadly stipulate as to its ERISA fiduciary status in connection with all "conduct and omissions" alleged in the complaints asserting

ERISA claims.  AllianzGI US remains willing to enter into a stipulation as to the application of ERISA, and is considering whether it can accept Plaintiff's proposal (or a mutually acceptable version thereof), or whether differences in the complaints will ultimately require a decision by the Court as to ERISA's preemptive effect in those cases with ERISA claims.  The Parties will continue to meet and confer on this issue as part of the proposed conferral on December 15, 2020.

AllianzGI US respectfully reserves the right to seek an extension of the schedule in the event the Court does not order the MTD Cut-Off Date and additional related actions are filed, or to the extent necessary following the Parties' meet and confer regarding the form and substance of the motions to dismiss on December 15, 2020 or after amended complaints, if any, are filed on December 24, 2020.  (*See* Exhibit A at ¶ 8.)  AllianzGI US further respectfully reserves its right to seek an adjournment of any discovery or proposed meet and confer deadline set out in this submission or Exhibit A to the extent new related actions are filed and designated as related to the Related Actions.

Respectfully submitted this 3rd day of December, 2020,


/s/  Michael Blatchley

Hannah Ross
Avi Josefson
James Harrod
Michael Blatchley
BERNSTEIN LITOWITZ BERGER
AND GROSSMANN LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

*Co-Counsel for Plaintiff Arkansas Teacher*
*Retirement System*

/s/  Robert J. Giuffra, Jr.

Robert J. Giuffra, Jr.
Stephanie G. Wheeler
Kathleen Suzanne McArthur
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2468
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants Allianz Global*
*Investors U.S. LLC, Allianz Global*
*Investors U.S. Holdings LLC, Allianz SE,*

*Counsel for Plaintiffs Employes' Retirement System of the City of Milwaukee; Chicago & Vicinity Laborers' District Council Pension Fund and the Chicago & Vicinity Laborers' District Council Health & Welfare Fund, and Catherine Wenskus, Administrator; The Boards of Trustees for the Carpenters Health and Security Trust of Western Washington and for the Group Investment Trust of the Carpenters Individual Account Pension Trust of Western Washington and Carpenters Retirement Trust of Western Washington*

/s/   Frederic S. Fox

Fredric S. Fox
Donald R. Hall
Melinda Campbell
Aaron Schwartz
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Co-Counsel for Plaintiff Arkansas Teacher Retirement System*

*Co-Counsel for Plaintiffs Chicago Area I.B of T. Pension Plan & Trust and Local 703 I.B. of T., Grocery and Food Employees' Pension Plan & Trust*

/s/   David S. Golub

David S. Golub
Steven L. Bloch

*Allianz Asset Management GmbH, Allianz of America, Inc., Allianz Asset Management of America Holdings Inc., Allianz Asset Management of America LLC, Allianz Asset Management of America LP, and PFP Holdings Inc.*

/s/  Robert A. Skinner

Robert A. Skinner
Amy D. Roy
Mary Elizabeth Brust
Cole A. Goodman
ROPES & GRAY LLP
Prudential Tower
800 Boylston
Boston, MA 02199
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050

*Co-Counsel for Defendant Allianz Global Investors U.S. LLC*

/s/  Renita Sharma

Renita Sharma
Richard Irving Werder, Jr.
Andrew Peter Marks
Michael Ethan Liftik
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue
22nd Floor
New York, NY 10010
Telephone:  (212) 849-7413
Facsimile:  (212)-849-7100

*Counsel for Defendant Aon Investments USA Inc. f/k/a Aon Hewitt Investment Consulting, Inc.*

Ian W. Sloss
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769

*Counsel for Plaintiffs Retirement Program for
Employees of the Town of Fairfield;
Retirement Program for Fairfield Police and
Firemen's Retirement System; Board of
Trustees of the New England Health Care
Employees Pension Fund, and New England
Health Care Employees Pension Fund*


 */s/   Jonathan L. Hochman*
Jonathan L. Hochman
Matthew A. Katz
Jenny C. Gu
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, NY 10005
Telephone:  (212) 277-6300
Facsimile:  (212) 277-6333

*Counsel for Plaintiff Lehigh University*


*/s/  William C. Fredericks*
William C. Fredericks
Donald A. Broggi
Zachary M. Vaughan
SCOTT + SCOTT ATTORNEYS AT LAW
LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334

*Counsel for Plaintiffs Teamster Members
Retirement Plan f/k/a GCIU Inter-Local
Pension Plan and Bricklayers and Masons'
Local Union No. 5, Ohio Pension Fund*

/s/   Daniel Z. Goldman
Daniel Z. Goldman
PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
Telephone:  (212) 370-0330


/s/  Sean W. Gallagher
Sean W. Gallagher
Adam L. Hoeflich
Mark S. Ouweleen
Abby M. Mollen
Nicolas L. Martinez
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone:  (312) 494-4400

*Counsel for Plaintiff Blue Cross and Blue
Shield Association National Employee
Benefits Committee*


/s/  Javier Bleichmar
Javier Bleichmar
George N. Bauer
BLEICHMAR FONTI & AULD LLP
7 Times Square, 27th Floor
New York, New York 10036
Telephone:  (212) 789-1340
Facsimile:  (212) 205-3960

*Counsel for Plaintiffs Metropolitan
Transportation Authority Defined Benefit
Pension Plan Master Trust, Manhattan and
Bronx Surface Transit Operating Authority
Pension Plan, Metropolitan Transportation
Authority Other Postemployment Benefit
Plan; and the Board of Trustees of the
International Brotherhood of Electrical
Workers, Local No. 38 Pension Fund Pension
Plan*

*/s/  Regina Calcaterra*
Regina Calcaterra
Justin Teres
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Telephone:  (212) 899-1760

*Counsel for Plaintiffs Metropolitan*
*Transportation Authority Defined Benefit*
*Pension Plan Master Trust, Manhattan and*
*Bronx Surface Transit Operating Authority*
*Pension Plan, and Metropolitan*
*Transportation Authority Other*
*Postemployment Benefit Plan*


*/s/  Scott F. Hessell*
Scott F. Hessell
John Bjork
Ashima Talwar
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone:  (312) 641-3200

*Co-Counsel for Plaintiffs Chicago Area I.B of*
*T. Pension Plan & Trust and Local 703 I.B. of*
*T., Grocery and Food Employees' Pension*
*Plan & Trust*

*/s/  Justin S. Brooks*
Justin S. Brooks
Elizabeth H. Shofner
Reuben A. Guttman
GUTTMAN, BUSCHNER & BROOKS
PLLC
119 Coulter Ave., Suite 211
Ardmore, PA 19003
Telephone: (610) 547-9556

*/s/  Jonathan D. Karmel*
Jonathan D. Karmel

KARMEL LAW FIRM
221 N. La Salle Street, Suite 1550
Chicago, IL 60601
Telephone: (800) 459-6264

_/s/   Kenneth A. Wexler_
Kenneth A. Wexler
Mark J. Tamblyn
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone:  (312) 346-2222

*Co-Counsel for Plaintiffs Paul Schaefer,
Robert O'Toole, Marc Parker, Brian Jordan,
Mark Jacobs, and William R. Seehafer, as
trustees of the United Food & Commercial
Workers Unions & Employers Midwest
Pension Fund, on behalf of the Plan*

cc:  Counsel of Record (by ECF)